## McALLISTER v STATE

Ohio Appeals, 2nd Dist, Madison Co

No 90. Decided November, 1932 . . .

Frank L. Johnson, Xenia, for plaintiff in error.

H. H. Crabbe, Prosecuting Attorney, London, for defendant in error.

HORNBECK, J.

The questions of law presented by briefs of counsel for plaintiff in error do not require any extended statements of the facts out of which this prosecution arose. The first and most serious ground of error suggested is that the court erred in permitting the testimony of one Arnott Loy who, prior to the time of trial, had been adjudged an insane person and as of date of the trial was out on a trial visit without, in the proper manner, determining the qualification of the witness before he testified. The statute, §11493 GC, is cited, which provides that persons of unsound mind shall not be competent witnesses.

The record respecting Mr. Loy discloses that, after he was put on the stand and a few preliminary questions asked, Mr. Johnson, counsel for plaintiff in error made this statement: "We would like to let the record show at this time that we ask the privilege to examine Mr. Loy as to his qualifications and competency on the ground—"

COURT: "Wait until we get to that. You will have that right. You are premature."

MR. JOHNSON: "I don't want all his evidence to go to the jury until we have first established his competency to testify."

COURT: "All witnesses are presumed to be competent at the start. Let us get at it right. Let's don't take any advantage of each other."

MR. JOHNSON:—"I want the record—"

COURT: "Objection overruled at this time."

MR. JOHNSON: "Note an exception to the conduct of the court."

Exception.

Thereafter, upon direct examination, it developed that Mr. Loy had recently been confined in the Lima State Hospital, but that on November 8, prior to the trial, he was released. Thereupon, Mr. Johnson said: "Let the record show we renew our objection to his testimony until the State first shows. I would like to get into the record if I might."

COURT: "You are so previous."

MR. JOHNSON: "We object to his testifying on the ground that the record shows he was an inmate of the State Insane Asylum and we ask the right at this time to cross examine him to determine his competency to testify as a witness."

COURT: "The ruling is deferred upon that question."

MR. JOHNSON: "Note an exception to deferring."

Thereafter, without further objection or exception, and without any inquiry by the court as to the qualification of the witness he was permitted to conclude his direct examination. Upon cross-examination counsel for plaintiff in error questioned Mr. Loy fully and at length respecting his commitment to the Lima State Hospital for the insane at Lima, Ohio, and it further appeared that he had been released on November 8, prior to the trial, probably on probation, although the exact nature of his release did not appear. Thereupon, Mr. Johnson moved to strike all the testimony.

We have examined the question presented very carefully. It is the rule that, upon the suggestion of insanity or a weakness of mind disqualifying the witness, the court shall determine his qualification, generally upon inquiry made by the court or by counsel with the consent of the court, before the witness is permitted to proceed with his testimony. If it appears that he has been adjudged insane and is still under commitment, there is a presumption of his incompetency, 28 R.C.L., 451-455. However, an insane person may testify if it appear that he has lucid intervals or is capable of appreciating the character of an oath or

possesses mental capacity sufficient to observe, recollect and narrate facts respecting which he is called upon to testify. If the court determines that he is a proper witness, then the weight and credibility of his testimony may be placed before the jury with proper instructions, such as was observed in the instant case. The subject is very completely presented in the case of Lanier, Guardian, etc. v Bryan, Appt. (N. C.), 26 A.L.R., 1486, and especially in the annotation thereto at page 1491. In Ohio we have a few cases on the question. **Williams v State of Ohio, 11 O.C.C. (N.S.), 4,** the second proposition of the syllabus:

"An objection to the competency of a witness on the ground of his mental incompetency does not require that the court stop the trial at that point and immediately institute an inquisition as to the mental capacity of the witness."

In this case the testimony of Glenn, the witness, was challenged because he was mentally incompetent, although it did not appear nor was it claimed that he had been adjudged an insane person. The court, page 9 said:

"If the examination in chief, or the cross-examination even, tended to bring to the attention of the trial judge that there was such mental infirmity, it would have been his duty to have taken care of it in the proper way; if it was disclosed that the person was of unsound mind and mentally weak, he should have then withdrawn the testimony from the jury. But from a careful examination of this record, we think there was no prejudice in this case as to the competency of this man on the ground of lack of mental capacity, for the manner in which this record discloses that he had detailed facts and circumstances, and the manner in which he underwent the close, careful, rigid cross-examination of counsel, would indicate that he was at least possessed of the ordinary degree of mentality. We cannot hold to the idea, that on a mere objection, that the court was compelled to institute on the side an inquisition as to the mentality of the witness. We think that is not the practice and not the rule. Therefore we hold the court was not in error so far as that objection is concerned, in admitting him as a witness in the case."

The case of **State of Ohio v Brown, 20 O.N.P., 385,** a decision by Judge Nippert of Hamilton County, very carefully and thoroughly considers our question. In that case an attendant at an insane asylum was charged with the murder of a patient. The eye witnesses to the killing were Marshall and Clancey, both of whom had been inmates of Longview Asylum. Marshall, at the time of the trial, had been released. Clancey was still confined. The court at page 393 said:

"The burden of proof in the case of Marshall rested upon the defendant to show that Marshall was incompetent to testify; while in the case of Clancey the burden was upon the state to show that Clancey was competent."

In Clancey's case no medical experts were called. The court said:
"The alertness of mind, as demonstrated by Clancey during his cross-examination, showed beyond doubt not only that he knew the sacredness and obligation of an oath and realized the pains and penalty of perjury, but that he was fully capable, as far as his memory was concerned, to give a coherent and logical account of the occurrences concerning which he was called upon to give his testimony."

The same thing might be said of Loy in this case, insofar as it can be judged from the record. The court in the Brown case, supra, at page 398 cites, (District of Columbia v Armes, 107 U.S., 519):

"A person affected with insanity is admissible as a witness, if it appears to the court, upon examining him and competent witnesses, that he has sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue."

Loy, although he had been adjudged insane, had been released temporarily at least. The exact nature of his release not appearing. The court did not adopt the usual procedure of interrogating the witness. Counsel for plaintiff in error was well within his rights in calling attention at the earliest opportunity to the possible disqualification of the witness and in requesting the court to make preliminary determination of his competency. However, it must be presumed from the whole record that observation of the witness was made by the court touching his mental qualifications and that he resolved his opinion in favor of receiving the testimony. The court has

discretion in such a situation as presented. The safe procedure is a preliminary inquiry and, if necessary, in the absence of the jury. But if a court, upon the appearance, manner and obvious intelligence of the witness, chooses to take another course and the record sustains his judgment no prejudice can be said to result. The conclusion to which we have come, upon a careful reading of Loy's testimony, is that it sustained the procedure followed by the trial court and that no prejudice resulted by the action taken.

Further assignment of error is that the court permitted the witness, Loy, to remain in the court room while the testimony of Snyder, who was an accomplice, was offered and thereafter let Loy testify. The witness, Loy, upon inquiry respecting his presence in the court room said that he had only heard Mr. Snyder say three or four words, that he thereupon left. He denied that he heard more, although he admitted that he came into the court room a second time while Snyder was testifying. Cletus Bookwalter, called on behalf of the defendant, said that Loy was in the court room the day before he, Mr. Bookwalter, testified, from fifteen minutes to half an hour, while testimony was being taken. He did not state what witness or witnesses were on the stand. Bernard Smalsky said that Loy was in the court room from ten minutes to half an hour while the testimony of Mr. Snyder was being taken. The record does not disclose that there was an order by the court for a separation of the witnesses. In the absence of such an order, clearly no error could be predicated upon the motion of the trial court.

Complaint is made that the court erred in refusing to give special charges numbers 2, 3 and 4, requested by the plaintiff in error. Special charge No. 2 reads:

"The corroboration required in a perjury case, must be corroboration as to the falsity of the matter assigned as perjury. In this case, the matter assigned as perjury is as follows, to-wit:
'The said Samuel McAllister was not present at the apartment of Dr. Richie at 41½ West High Street, Springfield, Ohio, at a quarter after twelve to around twenty minutes of one on the morning of August 2, 1930; and that he did not take the said John Duffy to his home on Glenmore Drive in Springfield, Ohio, at the time aforesaid.'
If the jury find that the State has failed to corroborate the above matter, which is assigned as perjury, beyond a reasonable doubt, then in that event you must acquit the defendant. Corroboration as to any other evidence is not sufficient to convict."

Charge No. 3 reads:

"Before the jury can convict the defendant in this case, the State must have proved by one witness, corroborated by another witness or by circumstantial evidence which convinces you beyond a reasonable doubt that the robbery with which John Duffy was charged took place on Friday night, August 1st, 1930, or the early morning of August 2nd, 1930."

Charge No. 4 reads:

"In a perjury case, the jury cannot convict the defendant on the uncorroborated testimony of one witness. To warrant a conviction under an indictment for perjury, there should be at least one witness to the falsity of the matter assigned as perjury, and the testimony of that witness must be corroborated, either by another witness or by substantial evidence sufficiently strong to satisfy the jury beyond a reasonable doubt of the guilt of the accused.

If you can reconcile all the evidence in this case with the innocence of the defendant, except the testimony of Gladys Robinson, then I charge you, in that event you must acquit the defendant."

This being a criminal case, the court was not required to give the special charges before argument but if they state sound propositions of law germane to the case and were not covered by the general charge it would be error of the court not to have given them or the substance of them. It will be noted that charges No. 2 and No. 3 are inconsistent. In No. 2 it is said that the corroboration must cover the matter assigned as perjury. No. 3 required corroboration of other matter. The court, upon the question of corroboration very fully covered the essentials as defined by statute and adjudication. It is extended and we shall not quote it. Suffice to say that we have heretofore approved the charge on the matter in the case of Richie v State of Ohio. We are of opinion that the charge, as given was sufficient and protected the rights of plaintiff in error. That part of

special charge No. 4 frequently used in conjunction with the definition of reasonable doubt could properly have been given but inasmuch as "reasonable doubt" is defined by statute and the court is required to give it as there stated or substantially so, we feel that having done that it was not prejudicial error to refuse to incorporate the exact language of charge No. 4.

Upon a fair and careful consideration of the record in this case we find no error prejudicial to the plaintiff in error, requiring its reversal. The judgment will, therefore, be affirmed.

ALLREAD, PJ, and KUNKLE, J, concur.